**Commonwealth v. Strause**

*Frederick S. Wolfson,* Assistant District Attorney, for Commonwealth.

*Allen H. Krause,* for defendant.

MEYER, J., December 15, 1970.—On May 5, 1970, Mae C. Strause was apprehended by an officer of the Pennsylvania State Police and charged with operating under the influence of "intoxicating beverages"[1] in violation of section 1037 of The Vehicle Code. In connection with the apprehension, a qualified breathalyzer expert administered the test to Mrs. Strause and the results indicated an alcohol blood content by weight of .19 percent.

Following a preliminary hearing held May 11, 1970, defendant was bound over for court.

On July 29, 1970, defendant filed a pretrial application to dismiss the charge because of the language employed by the justice of the peace in the complaint in describing the offense as ". . . Driving Under the Influence of Liquor in that she did while driving a Mercury Cpe. bearing Penna. Reg. #04971C, Sticker #639118 North on No. 7th St. in North Lebanon Twp. Defendant was weaving all over the road, went in South bound Lane, forcing other cars off the road."

---

[1] Quotes from defendant's brief.

We issued a rule on the district attorney, who subsequently answered the application.

On August 17, 1970, we entered an order refusing the application for relief after a conference in chambers with counsel. Thereafter, the district attorney submitted the indictment to the grand jury which approved it on August 31, 1970. On September 3, 1970, an identical pretrial application was filed and answered, and on September 14, 1970, was refused.

The case came to trial on September 17, 1970, resulting in a verdict of guilty.

On September 18, 1970, defendant filed a motion for a new trial, alleging that the verdict was contrary to the weight of the evidence and that the trial court erred in admitting into evidence the results of the breathalyzer test taken one and one-half hours and upwards after the driving by defendant for which she was charged without any other testimony indicating that it was adequate proof of the blood alcohol content of defendant at the time she was driving, thereby prejudicing her.

The case was then set down for argument, orally argued before the court en banc and we now have the benefit of briefs by counsel.

At argument, defendant argued that the pretrial application was improperly dismissed. Defendant charges that, by omitting an essential element of the crime in the complaint, that is, that the liquor was "intoxicating," defendant was improperly charged and the proceeding should have been dismissed on defendant's pretrial application or applications.

Defendant further complains that the conference with the hearing judge resulted in a dismissal of the pretrial application because it was filed prior to the finding of a "true bill" (sic) of indictment by the grand jury. This reason is not a matter of record nor need it

be. If a ruling is correct, it is unimportant that the reason for it may be incorrect. Therefore, it is unnecessary for us to explore and interpret the newly adopted rules for pretrial application because we are firmly of the opinion that the ruling was correct.

Criminal proceedings are instituted by the filing of a complaint. The purpose of a complaint is to advise defendant of the nature of the charges that have been leveled against him to satisfy the notice aspect of due process of law. But complaints, like the old informations, are prepared by justices of the peace and, sometimes, police officers. These persons are not learned in the law and their work has never been scrutinized with the care and perception that is required of proceedings and pleadings prepared by attorneys and judges.

Under Rule 104 of the Rules of Criminal Procedure, the complaint must contain a summary of the facts sufficient to advise defendant of the nature of the offense charged. A careful reading of this complaint informs defendant that she is charged with violating a misdemeanor provision of The Vehicle Code and that the acts committed by her were ". . . Driving Under the Influence of Liquor in that she did while driving a Mercury Cpe. . . . North on No. 7th St. in North Lebanon Twp. Defendant was weaving all over the road, went in South bound Lane, forcing other cars off the road. . . . Violation occurred app. 7:35 P. M. of said day. All of which were against the peace and dignity of the Commonwealth of Pennsylvania and/or contrary to the Acts of Assembly Section 1037 in such case made and provided." These facts, we believe, are sufficient to advise this defendant of the nature of the charges and the omission of the adjective "intoxicating" before the word "liquor" is an immaterial omission and the objection to it hyper-

technical. Consequently, the summary disposition of the application was justifiable.

Defendant next contends that the admission into evidence of the results of the breathalyzer test, under the circumstances of this case, was improper and prejudicial to defendant.

On Tuesday, May 5, 1970, at about 7:15 p. m., a constable[2] of the City of Lebanon observed defendant operating an automobile north on Seventh Street in the City of Lebanon. He noticed that the automobile was weaving and he followed it north on Seventh Street into North Lebanon Township. Defendant's automobile continued to weave from side to side across the center line of the highway, forcing other automobiles off the road. Some of the oncoming motorists blew their horns in an attempt to call attention to the dangerous manner in which defendant was operating her car. The constable testified that he had difficulty getting close enough to stop her but that he eventually pulled her alongside of the road. The constable got out of his automobile and began talking with defendant. She was loud and argumentative, her speech was slurred, and he detected an odor of alcohol on her breath. The constable was of the opinion that she was under the influence of intoxicating beverages.

The constable then summoned the police. Trooper Ronald J. Franzone, of the Pennsylvania State Police, was the first officer to arrive at the scene. He had been on his way to investigate a burglary when he noticed the constable standing in the roadway and defendant's vehicle parked along the road. He testified that he observed defendant at the scene. He noticed a strong odor of alcohol on her breath, that she had a staggered

---

[2] Defendant's argument that the constable was an officious intermeddler is poorly put. Constables are, and have always been, peace officers, charged with the enforcement of the criminal law.

gait and that her eyes were red. He stated that, in his opinion, she was under the influence of intoxicating liquor at the time he saw her.

Trooper William E. McAvoy, of the Pennsylvania State Police, was the next officer to arrive at the scene. He too observed defendant and noted that she had a staggering gait, her voice was slurred and that she did smell of alcohol. He testified that, in his opinion, defendant was under the influence of intoxicating beverages. He asked her to accompany him to the State Police Barracks for the purpose of administering a breathalyzer test. Prior to leaving the scene, he fully advised her of her legal and constitutional rights and asked if she had been drinking. She told the trooper that she had two and one-half quarts of beer. He then took her to the barracks at Jonestown and waited for Trooper Franzone, who was the qualified breathalyzer operator.

Franzone testified that he began administering the test at five minutes after nine. He further testified that the breathalyzer test results indicated that Mrs. Strause had .19 percent alcohol content in her blood at that time. Thereafter, Mrs. Strause was charged with a violation of section 1037.

Specifically, defendant contends that she was seriously prejudiced by the introduction into evidence of the results of the breathalyzer test inasmuch as it was not given to her until one hour and 45 minutes after she stopped operating her car. She argues that ingestion of alcohol into the blood stream is not instantaneous but occurs over a period of time following the consumption of alcohol. Her argument continues that, since the last drinking done by her was at 7:15 p.m., and that she was stopped at 7:20 p.m., she could very well have been sober while driving but intoxicated an hour and 45 minutes later.

Defendant's argument has two weaknesses. In the first place, the question of when she did her drinking came from her own mouth and the jury did not have to believe it. Thus, if we accept as gospel the contention that the ingestion process is a time spanning one, to conclude that she was sober while driving would, of course, have to depend on when she did the drinking.

The second fatal weakness in her contention is that the General Assembly has specifically provided that the results of a breathalyzer are admissible in evidence and if the alcohol by weight in the blood of the person tested is .10 percent or more, it shall be presumed that defendant was under the influence of intoxicating liquor: Section 624.1(b)(c).

Nowhere in this section of The Vehicle Code is there any limitation as to the time within which the test must be or may not be given. Obviously, the test cannot be administered while defendant is still driving and, therefore, the legislators must have contemplated that the test be administered some time after defendant has stopped driving. Consequently, the admissibility of the results of a test given some time after defendant was, in fact, operating must depend on other factors in the case and the admissibility of the evidence largely one of discretion with the trial judge.

Defendant would have us, in effect, rewrite this statute. This we prefer not to do, because we find it extremely meritorious when we consider that one out of every 750 Pennsylvanians will be the victim of a serious crime this year while one out of only 75 will be killed or injured in a traffic accident. Furthermore, surveys indicate that the drunken driver is the unchallenged premier villain in highway accidents. Responding to this alarming situation, the General Assembly, several years ago, enacted the "implied

consent law" we have referred to herebefore. True, it may not be perfect legislation, but it is a tool of value to law enforcement officials and it would be injudicious of us to rewrite it.

It is defendant's position that we should require the Commonwealth to introduce expert testimony to relate the results of the test taken at some time subsequent to the operation of the motor vehicle by defendant back to the time of operation. Concededly, the statute does not require this. Nor do we believe it would be very helpful if it did. It is well known and admitted by defendant in her brief that ingestion rates and extrapolation rates vary greatly among individuals and is strongly dependent upon the content of the stomach, the time alcohol beverages were consumed, the nature of the beverages and, of course, the amount. All of this information would have to be considered by an expert before he could render any reliable opinion and, naturally, would have to come from defendant. This type of factual information furnished by a defendant would frequently be self-serving and, furthermore, no defendant could be required to furnish it. Therefore, we do not see much merit in defendant's contention that we rewrite the statute in this way.

Nor do we feel that defendant will be treated unfairly by this. Nothing in the world prevents defendant from defending on this ground by producing an expert witness of her own. So, we conclude that the admissibility of this evidence was not prejudicial to defendant under the circumstances of this case.

Finally, defendant asks us to hold that section 624.1 of The Vehicle Code, insofar as its application to the subject case or the provisions involved in the subject case, unconstitutional because it violates procedural due process under the fourteenth amendment of the United States Constitution. Her argument is unpersuasive.

It is a settled principle of constitutional law that each State may set up and determine its own particular methods of procedure in criminal cases and the methods need not be ideal, but they should conform to the essential requirements of fairness and justice, including full opportunity to be heard, an impartial tribunal, absence of fraud, bias or prejudice, and freedom from outside duress. We are of the opinion that this provision of The Vehicle Code comports with these constitutional requirements.

Pennsylvania's implied consent statute is not an original work. In varying forms, substantially similar to Pennsylvania's statute, many other States have adopted similar provisions in their motor vehicle codes. To our knowledge, none of them have been held to be an unconstitutional deprivation of procedural due process. Of course, this is not necessarily an indication that it is constitutional. But it is indicative of the fact that legislators throughout the country have made extensive studies as to the relationship between alcohol in the blood and a person's ability to safely operate a motor vehicle on the highways. We can only conclude that the percentages set forth in the statute are based upon scientific evidence sufficient to satisfy the conscience of the legislators.

Furthermore, the statute specifically permits a person to refuse to take the test or to have their own physician then and there administer the test in addition to the one administered by the police officer. The creation of the presumption does not relieve the Commonwealth from its burden of proving each and every element of the offense beyond a reasonable doubt. This burden remains on the Commonwealth throughout the case and the jury in this case was specifically so instructed. What is fair and just very often is subjective and dependent upon whose ox is being gored. But we are of the opinion that the statute and

the way it was employed in the trial of this case complies with any reasonable man's standard of fairness and reasonableness. So we are disinclined to wipe off this statute with a judicial pronouncement that it is unconstitutional because it is unfair. We must presume a statute is constitutional and its opponents bear a heavy burden of persuading us that it is not. This, defendant has failed to do.

We have considered carefully each and every argument submitted to us by defendant and we find them to be without merit. Therefore, we will make the following

### ORDER

And now, to wit, December 15, 1970, defendant's motion for a new trial is refused and defendant is ordered to appear before us for sentencing on December 29, 1970, at 10 a.m., in Courtroom 1.